## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DALE HARRISON,

    Plaintiff,

    v.

TROY D. BERRY,
*Sheriff of Charles County Sheriff's Office,*
*in his official capacity,*

    Defendant.

Civil Action No. 25-2958-TDC

### MEMORANDUM OPINION

Plaintiff Dale Harrison has filed a civil action against Defendant Troy D. Berry, the Sheriff of Charles County, Maryland ("the Sheriff"), in which he alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20601 to 20–611 (LexisNexis 2021); and 42 U.S.C. § 1983. The Sheriff has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Sheriff's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiff Dale Harrison is a Corporal in the Charles County Sheriff's Office ("CCSO"), in which he has worked for 18 years. Until 2024, Harrison had satisfactorily performed his duties in line with the CCSO's expectations. However, on or about January 12, 2024, Harrison was charged in state court with Driving Under the Influence ("DUI") and was suspended from his position.

Harrison was allowed to return to work approximately nine months later, on October 30, 2024, but on December 23, 2024, he was suspended again and recommended for termination by CCSO Captain Andrew Swaub because of the DUI charge. Harrison has remained on administrative leave since that date, pending a determination of whether he should be terminated pursuant to that recommendation. While on administrative leave, Harrison is ineligible for overtime pay, premium pay, or promotions.

Harrison, who is African American, asserts that he has been disciplined differently in connection with his DUI charge than similarly situated White officers at CCSO. Specifically, he alleges that in two separate instances, White officers drove their CCSO cruisers while intoxicated and were involved in vehicle accidents. Although driving a cruiser while intoxicated is grounds for termination, in contrast to Harrison, both White officers were allowed by their commanding officers, who were also White, to return to work with "minimal or no discipline." Am. Compl. ¶ 20, ECF No. 6.

On or about January 14, 2025, Harrison filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). After Harrison received a Notice of Right to Sue from the EEOC, he filed the original Complaint in this case on September 9, 2025 against Sheriff Berry, the elected Sheriff of Charles County, in his official capacity. In Count 1 of the presently operative Amended Complaint, Harrison alleges claims of race discrimination based on disparate treatment, in violation of Title VII and the MFEPA. In Count 2, Harrison alleges a claim under 42 U.S.C. § 1983 for a violation of the constitutional right to equal protection of the law based on race discrimination.

## DISCUSSION

In the Motion to Dismiss, the Sheriff seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of all of Harrison's claims based on the failure to state a claim on which relief can be granted. Specifically, the Sheriff argues that Harrison has failed to state a valid claim for race discrimination under Title VII, that the MFEPA claim fails because the Sheriff is a state official who is immune from suit in his official capacity in federal court pursuant to the Eleventh Amendment to the United States Constitution, and that the § 1983 claim fails because the Sheriff acting in his official capacity is not a "person" subject to suit under that statute. Mot. Dismiss at 7, ECF No. 12-1.

### I.     Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II.     Title VII

In Count 1, Harrison alleges a Title VII race discrimination claim based on his assertion that he was subjected to disparate discipline as compared to similarly situated White CCSO officers. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a Title VII discrimination claim, a plaintiff may demonstrate through direct or circumstantial evidence, as relevant here, that race "motivated the employer's adverse employment decision." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Alternatively, a plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

To state a *prima facie* claim of discrimination, a plaintiff must present facts demonstrating: (1) membership in a protected class; (2) satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment under similar circumstances. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To defeat a motion to dismiss, a plaintiff need not necessarily establish a *prima facie* case of discrimination, but "the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable'" for discrimination. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Here, the Sheriff argues that Harrison has failed to satisfy the third prong, that he was subjected to an adverse employment action, because Harrison's suspension did not result in any reduction in pay grade, salary, or benefits. An adverse employment action consists of any action that results in a "'disadvantageous' change in an employment term or condition" in that it inflicts "some harm" with respect to an "identifiable term or condition" of employment. *Muldrow v. City*

*of St. Louis*, 144 S. Ct. 967, 974 (2024). A term or condition of employment includes the "what, where, and when" of the plaintiff's employment and need not be an "economic or tangible" term. *Id.* Moreover, a Title VII plaintiff need not establish that the harm was "significant," "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.*

Prior to *Muldrow*, the United States Court of Appeals for the Fourth Circuit had found, in an unpublished opinion, that placement on paid administrative leave pending an investigation into alleged misconduct did not constitute an adverse employment action for purposes of Title VII. *See Nzabandora v. Rectors & Visitors of Univ. of Va.*, 749 F. App'x 173, 175 (4th Cir. 2018). *Nzabandora* relied on *Jones v. Southeastern Pennsylvania Transportation Authority*, 796 F.3d 323 (3d Cir. 2015), in which the United States Court of Appeals for the Third Circuit held that "[a] paid suspension pending an investigation of an employee's alleged wrongdoing" is not an adverse action within the meaning of Title VII because it does not "effect a 'serious and tangible' alteration of the 'terms, conditions, or privileges of employment.'" *Id.* at 326 (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).

*Muldrow*, however, dispensed with any requirement that the effect on a term or condition of employment must be one that caused "significant," "material," or "serious" injury. *Muldrow*, 144 S. Ct. at 975 n.2. Under the present standard of a "disadvantageous" change in a term or condition of employment that inflicts "some harm," *Muldrow*, 144 S. Ct. at 974, Harrison's initial suspension for nine months and subsequent suspension with a recommendation of termination satisfy the requirement. As alleged by Harrison, the suspension, while not resulting in a specific reduction in pay grade, salary, or benefits, rendered him ineligible for overtime pay, premium pay, or promotions and thus was plainly a disadvantageous change in a term or condition of

employment. *See Robinson v. Dist. of Columbia*, 275 F. Supp. 3d 95, 105–07 (D.D.C. 2017) (holding in a pre-*Muldrow* case that the loss of an opportunity to earn overtime pay could qualify as an adverse employment action); *Simms v. Md. Off. of Att'y Gen.*, No. 23-cv-2707-ABA, 2025 WL 213965, at *4 (D. Md. Jan. 16, 2025) (concluding post-*Muldrow* that the denial of overtime opportunities could constitute an adverse employment action). *Cf. Ray v. Int'l Paper Co.*, 909 F.3d 661, 667–68 (4th Cir. 2018) (in a pre-*Muldrow* case, concluding that the elimination of "voluntary overtime work" could be considered a "tangible employment action" for purposes of a hostile work environment claim, defined as a "significant change in employment status, . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (citation omitted)).

Although the Sheriff argues that the suspension was only temporary, where the period of the two suspensions had lasted a total of approximately 18 months as of the filing of the original Complaint, and where the second suspension was accompanied by a recommendation of termination, the Court finds that the suspension is fairly construed as both "disadvantageous" and causing "some harm" to Harrison. *Muldrow*, 144 S. Ct. at 974. Accordingly, the Court finds that Harrison had adequately pleaded an adverse employment action under Title VII and will deny the Motion as to the Title VII race discrimination claim in Count 1.

## III.   State Official

The Sheriff, who has been sued only in his official capacity, seeks dismissal of the MFEPA race discrimination claim asserted in Count 1 pursuant to the Eleventh Amendment to the Constitution. The Eleventh Amendment states in relevant part that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. Const. amend. XI.

6

Pursuant to this provision, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). The State of Maryland has not waived its Eleventh Amendment immunity from MFEPA claims asserted in federal court. *See id.* at 101–02. Thus, an MFEPA claim asserted against the State of Maryland is barred by the Eleventh Amendment. A suit against a state official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and thus is "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an MFEPA claim asserted in federal court against a state government official in that employee's official capacity is barred by the Eleventh Amendment. *See id.*

The Sheriff seeks dismissal of the § 1983 claim asserted in Count 3 for similar reasons. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Because the statutory language establishes that a § 1983 claim must be asserted against a "person," 42 U.S.C. § 1983, and "neither a State nor its official acting in their official capacities are 'persons' under § 1983," a § 1983 claim asserted against a state government official fails to state a valid claim. *Will*, 491 U.S. at 70–71.

Although these legal principles are largely undisputed, Harrison asserts that dismissal of the MFEPA and § 1983 claims is not warranted because the Sheriff is not a state official and is instead a county official. The question of whether a defendant is a state official or a county official for purposes of Eleventh Amendment immunity and a § 1983 claim is a matter of federal law, not

state law. *See Ram Ditta By & Through Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 459–460 (4th Cir. 1987). In determining whether an employee of a government agency is a state official for purposes of Eleventh Amendment immunity, the Fourth Circuit applies a "four-part, nonexclusive test" consisting of the following factors: (1) "whether the state treasury will be responsible for paying any judgment that might be awarded"; (2) "whether the entity exercises a significant degree of autonomy from the state"; (3) "whether it is involved with local versus statewide concerns"; and (4) "how it is treated as a matter of state law." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (en banc) (quoting *Ram Ditta*, 822 F.3d at 457–58). The first of these factors is the "most important consideration." *Id.*

As to the first factor, "whether the state treasury will be responsible for paying any judgment that might be awarded," *id.*, Maryland law provides that subject to certain limitations, the Maryland Board of Public Works may "pay wholly or partly a settlement or judgment against the State or any State personnel." Md. Code Ann., State Gov't §§ 12–404(1). For purposes of this provision, the term "State personnel" includes "any other individual who, with or without compensation, holds a position that requires the exercise of discretion and of a part of the sovereignty of the State" or "any other State officer or State employee." *Id.* §§ 12–401(12)–(13). Although the term does not explicitly include personnel of a county sheriff's office, the same statute imposes certain procedural requirements on an application for payment of a settlement or judgment "on behalf of a sheriff or deputy sheriff of a county," which clarifies that sheriffs are considered "State personnel" under the statute. *Id.* § 12–405(b)(5). At the same time, this same provision notes that these procedural requirements need not be met as to "claims relating to . . . personnel and other administrative activities," which confirms that such claims are subject to this authorization for state payment of judgments. *Id.* § 12–405(a)(4). Thus, where Harrison's claims

are based on a personnel action taken against him by a county sheriff, the Court concludes that the state would be responsible for payment of any resulting judgment. *See Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1139760, at *1, *21–25 (D. Md. Mar. 25, 2021) (relying in part on this analysis of Md. Code Ann., State Gov't §§ 12–404 and 12–405 in concluding that the Sheriff of Frederick County, Maryland was a state official and thus could assert Eleventh Amendment immunity in the context of an MFEPA claim for sex discrimination).

Although Harrison invokes section 9–108 of the State Finance and Procurement Article of the Maryland Code, that provision is consistent with this Court's analysis. Section 9–108 provides that if a county lacks adequate insurance coverage to satisfy a judgment and pay the expenses of a defense in relation to a Maryland Tort Claims Act ("MTCA") claim against a sheriff or deputy sheriff, the state will offset the amount the county owes from state funds appropriated to the county, or from the county's share of the state income tax. *See* Md. Code Ann., State Fin. & Proc. § 9–108(b), (d) (LexisNexis 2021 & Supp. 2024). Notably, however, section 9–108 applies only to claims arising from the "law enforcement functions or detention center functions" of sheriffs or deputy sheriffs and expressly does not apply to certain other categories of claims, including those relating to "personnel and other administrative activities." *See id.* §§ 9–108(b)(4), (b)(6). This provision thus reflects that a county is generally responsible for payment of a judgment on an MTCA claim against a sheriff's office arising from a law enforcement action. *See id.*; Md. Code Ann., State Gov't §§ 12–103.3(b)(1), (d)(1)–(2) (LexisNexis 2021 & Supp. 2024) (providing that for a claim alleging "tortious conduct by a sheriff or deputy sheriff arising out of activities relating to the performance of a law enforcement function," the claim is to be "considered, defended, settled, and paid in the same manner as any other claim filed against a county," and the "liabilities of the State" for such a claim "shall be assumed by the applicable county"). Indeed, in cases in

which tort claims were based on actions taken by sheriffs or deputy sheriffs as part of their law enforcement or detention functions, courts have found that the county would be responsible for any resulting judgment. *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 346 F. Supp. 3d 785, 789–90, 798–99 (D. Md. 2018) (concluding that the sheriff and deputy sheriffs of Frederick County, Maryland were not state officials subject to Eleventh Amendment immunity for purposes of alleged violations of rights committed while engaging in immigration enforcement activities pursuant to an agreement with federal authorities based in part on the conclusion that any judgment would be paid by the county); *Harried v. Maryland*, No. TDC-24-1190, 2024 WL 4817107, at *1–2, *5–6 (D. Md. Nov. 18, 2024) (concluding that a deputy sheriff of Prince George's County, Maryland was not a state official subject to Eleventh Amendment immunity for purposes of alleged violations of rights committed when using excessive force to make an arrest based in part on the conclusion that any judgment would be paid by the county pursuant to Md. Code Ann., State Gov't § 12–103.3).

Where, however, Harrison's claim is not an MTCA claim arising from a law enforcement action taken by a sheriff or deputy sheriff and is instead based on a personnel action, section 9–108 does not explicitly or implicitly provide that the county would be responsible for any judgment. *See Ensor*, 2021 WL 1139760, at *25. Accordingly, this factor favors treating the Sheriff as a state official.

As to the second factor, "whether the entity exercises a significant degree of autonomy from the state," *Harter*, 101 F.3d at 337, courts consider circumstances such as "who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, 650–51 (4th Cir. 2015). Here, the Maryland Constitution provides that a county sheriff is elected by

the residents of each county, with the Governor of Maryland responsible for appointing an individual to fill any vacancy for the remainder of the term of office. *See* Md. Const. art. IV, § 44. Further, the county provides the bulk of the funding for the Sheriff's Office, including funding the Sheriff Office's expenses and the salaries of all deputy sheriffs. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 2–313(c), 2–322(c)(4) (LexisNexis 2020). Finally, the state does not retain a veto over the sheriff's decision regarding employment issues, a duty specifically assigned to the sheriff and the Sheriff's Office. *See id.* § 2–322(e)(4)(v)–(vi). Accordingly, the Court finds that this factor favors treating the Sheriff as a county official. *See, e.g., Santos*, 346 F. Supp. 3d at 799.

On the third factor, whether the entity "is involved with local versus statewide concerns," "[i]t has long been understood that a sheriff is a law enforcement officer of the county" and "[s]heriffs have been considered county officers from the creation of that office in England." *Harter*, 101 F.3d at 341 (internal citations omitted). Sheriffs are generally "involved with local rather than state concerns." *Id.* at 342. To the extent that sheriffs are involved in state matters by enforcing state laws, "generally a sheriff may only enforce these laws, or perform these duties, within a given county." *Id.* Therefore, the Court finds that this factor weighs in favor of treating the Sheriff as a county official. *See id.*

Finally, as to the fourth factor of how the sheriff is "treated as a matter of state law," *id.* at 337, in *Rucker v. Harford County*, 558 A.2d 399 (Md. 1989), the Supreme Court of Maryland held that, "as a matter of Maryland law," a sheriff and deputy sheriff of a Maryland county were "officials and/or employees of the State of Maryland," based primarily on the fact that a sheriff is a "State constitutional officer whose duties are subject to control by the General Assembly." *Id.* at 402. Although *Rucker* predated amendments to state law establishing that a county is responsible for payment of a judgment arising from an MTCA claim arising from the law

11

enforcement activities of a sheriff or deputy sheriff, the MTCA explicitly includes a sheriff within the definition of "State personnel." Md. Code Ann., State Gov't § 12–101(a)(6). As discussed above, the term "State personnel" as used in section 12–405(b)(5) of the State Government Article also necessarily includes sheriffs and deputy sheriffs. This factor thus generally weighs in favor of a finding that the Sheriff is a state official for purposes of Eleventh Amendment immunity.

Where two of the four factors weigh in favor of such a finding, including the "most important" first factor of whether the state or the county will be financially responsible for any judgment in the case, *Harter* 101 F.3d at 337, the Court finds that for purposes of the claims in this case, the Sheriff is a state official such that any MFEPA and § 1983 claims against him in his official capacity are barred. Accordingly, the Sheriff's Motion to Dismiss will be granted as to those claims.

## CONCLUSION

For the foregoing reasons, the Sheriff's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the MFEPA and § 1983 claims asserted against the Sheriff in his official capacity and denied as to the Title VII claim. A separate Order shall issue.

Date: May 14, 2026

THEODORE D. CHUANG
United States District Judge

12